## Matter of Safet KOLJENOVIC, Respondent

File A078 831 534 - Newark, New Jersey

*Decided April 21, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien who entered the United States without inspection and later obtained lawful permanent resident status through adjustment of status has "previously been admitted to the United States as an alien lawfully admitted for permanent residence" and must therefore satisfy the 7-year continuous residence requirement of section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (2006), to be eligible for a waiver of inadmissibility.

FOR RESPONDENT: Henry A. Tesoroni, Esquire, Newark, New Jersey

BEFORE: Board Panel: GRANT, MALPHRUS, and MULLANE, Board Members.

MULLANE, Board Member:

In a decision dated June 24, 2008, an Immigration Judge found the respondent removable on his own admissions under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006), as an alien convicted of a crime involving moral turpitude, and denied his application for a waiver of inadmissibility under section 212(h) of the Act. The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Montenegro. He originally entered the United States without inspection and adjusted his status to that of a lawful permanent resident on September 24, 2001. He was convicted of second-degree organized fraud under section 817.034(4)(a)(2) of the Florida Statutes on December 20, 2004. The respondent was placed in removal proceedings when he arrived in the United States seeking admission as a returning lawful permanent resident on August 20, 2006. Although he has conceded that he is removable, he requested a waiver of inadmissibility under section 212(h) of the Act. The Immigration Judge denied the waiver, finding that the respondent was ineligible because he was lawfully admitted for permanent residence when he adjusted his status and he did not have the

requisite 7 years of lawful continuous residence since the date of his adjustment of status. On appeal the respondent argues that this requirement does not apply to him because he was not "admitted" as a lawful permanent resident when he adjusted his status.[1]

## II. ISSUE

The issue presented in this appeal is whether the respondent "has previously been admitted to the United States as an alien lawfully admitted for permanent residence" and must therefore satisfy the 7-year lawful continuous residence requirement of section 212(h) of the Act to be eligible for a waiver.

## III. ANALYSIS

In relevant part, section 212(h)(2) of the Act states that no waiver may be granted

> in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

The respondent originally entered the United States without inspection. He became a lawful permanent resident by adjusting his status under section 245 of the Act, 8 U.S.C. § 1255 (2006). The respondent's adjustment of status is not an "admission" as that term is literally defined in section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2006).[2] However, the limited definitions of the terms "admission" and "admitted" in section 101(a)(13)(A) do not resolve the meaning of the phrase "admitted . . . as an alien lawfully admitted for permanent residence" in section 212(h) of the Act. *See Matter of Rosas*, 22 I&N Dec. 616 (BIA 1999) (en banc).

---

[1]  This appeal presents a question of law, which we review de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2010); *see also Matter of A-S-B-*, 24 I&N Dec. 493 (BIA 2008). The respondent's application was filed after May 11, 2005, and is therefore governed by the provisions of the REAL ID Act. *See Matter of Almanza*, 24 I&N Dec. 771, 774 (BIA 2009).
[2]  Section 101(a)(13)(A) of the Act provides:

> The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

An alien may be admitted as a lawful permanent resident either by inspection and authorization to enter at the border or by adjustment of status if the alien is already in the United States. Adjustment of status is essentially a proxy for inspection and permission to enter at the border, which is given as a matter of administrative grace. "As we have repeatedly held, an adjustment of status is merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States." *Matter of Rainford*, 20 I&N Dec. 598, 601 (BIA 1992). Sections 245(a) and (i) and section 245A(b)(1) of the Act, 8 U.S.C. § 1255a(b)(1) (2006), plainly authorize the Attorney General to adjust an alien's status "to that of an alien lawfully *admitted* for permanent residence" and thus provide that adjustment applicants are to be treated as if they are being "admitted." (Emphasis added.) For these reasons, it is not necessary that section 101(a)(13) of the Act specifically include adjustment of status in the definition of an "admission."

We have consistently construed an adjustment of status as an "admission." In *Matter of Rosas*, 22 I&N Dec. 616, we held that aliens who are lawfully admitted for permanent residence through the adjustment of status process are considered to have effectuated an "admission" to the United States. In that case, the respondent entered the United States without inspection and thereafter adjusted her status to that of a lawful permanent resident pursuant to section 245A of the Act. The Immigration Judge found that her adjustment of status was not an "admission" within the meaning of section 101(a)(13) of the Act and that she was therefore not deportable as an alien convicted of an aggravated felony at any time after admission. We disagreed, noting that if that were the case, aliens who entered without inspection and later adjusted their status would never have been "admitted" for permanent residence and would therefore be ineligible for relief from removal that includes an "admission" requirement. We concluded that such an interpretation of the statute would be inconsistent with the overall structure of the Act as it has been amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA").

As we recognized in *Matter of Shanu*, 23 I&N Dec. 754 (BIA 2005), *vacated*, *Aremu v. Department of Homeland Security*, 450 F.3d 578 (4th Cir. 2006), this interpretation would also be contrary to section 245(b) of the Act, which instructs the Attorney General to "record the alien's lawful admission for permanent residence as of the date" that adjustment of status was granted. We therefore extended the rationale of *Matter of Rosas*, finding that an alien who has been accorded lawful permanent resident status is deemed to have been "admitted" as of the date of the adjustment of status. The alien in that case was initially admitted as a nonimmigrant visitor for pleasure and then subsequently adjusted his status to that of a lawful permanent resident. As in *Rosas*, we interpreted the term "admission" in the context of the

removability provisions in section 237(a)(2) of the Act, 8 U.S.C. § 1227(a)(2) (2006), and concluded that the respondent was deportable because he was convicted of a crime involving moral turpitude within 5 years of his adjustment of status.

Applying *Matter of Rosas* to the facts of this case, it is clear that the respondent's only "admission" into the United States was pursuant to his 2001 adjustment of status. The respondent, like the alien in *Rosas*, entered without inspection, so this is not a case where alternative dates of admission are possible. If his 2001 adjustment of status is not considered an admission, he would be in the absurd position of being a lawful permanent resident without ever having been "admitted" in that status and thus could be subject to inadmissibility under section 212(a)(6)(A)(i) of the Act and ineligible for various forms of relief. *See Matter of Rosas*, 22 I&N Dec. at 621-23; s*ee also Matter of Briones*, 24 I&N Dec. 355, 365 (BIA 2007) (stating that a statute should not be interpreted to reach an absurd result). Therefore, we conclude that the respondent's adjustment of status was an "admission" within the meaning of the Act.

The pertinent legislative history supports our conclusion. Section 212(h) of the Act was amended by section 348 of the IIRIRA, 110 Stat. at 3009-639, to include the language at issue in this case. The Conference Report accompanying the IIRIRA states, "The managers intend that the provisions governing continuous residence set forth in INA section 240A as enacted by this legislation shall be applied as well for purposes of waivers under INA section 212(h)." H.R. Rep. 104-828, at 228 (1996) (Conf. Rep.) (Joint Explanatory Statement), 1996 WL 563320. Section 240A(a)(2) of the Act, 8 U.S.C. § 1229b(a)(2) (2006), sets forth a continuous residence requirement of 7 years for cancellation of removal for lawful permanent residents. We consider the Conference Report's reference to section 240A of the Act to reflect Congress' intent to create congruity in the residence requirements for these two forms of relief, both of which are available to lawful permanent residents.

An interpretation of section 212(h) of the Act that does not treat an alien's adjustment of status as an admission that invokes the 7-year residence requirement would frustrate this legislative purpose. An alien who is removable for a criminal conviction, who obtained lawful permanent residence through adjustment of status, and who has not resided continuously in the United States for 7 years would be ineligible for cancellation of removal under section 240A but would remain eligible for a section 212(h) waiver. The legislative history of the IIRIRA indicates that Congress did not intend such a result.

This is particularly so in a case such as this where the alien entered the United States illegally and later adjusted his status. Congress presumably did

not intend for an alien who entered the United States illegally and was afforded the privilege of adjustment of status to be able to avoid the restrictions contained in section 212(h) of the Act, when those very restrictions would apply if the alien had gone through consular processing to be admitted as a lawful permanent resident.

Additionally, section 101(a)(13) of the Act was amended by the IIRIRA to define the terms "admission" and "admitted" in order to address complexities in the law resulting from the United States Supreme Court's decision in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). *See* H.R. Rep. No. 104-469(I), at 225-26 (1996). It was not intended to differentiate an adjustment of status from an admission after inspection at the border. Likewise it was not intended to modify the recognition in *Matter of Rainford*, 20 I&N Dec. 598, that adjustment of status is the functional equivalent of inspection and authorization to enter at the border.

The respondent cites *Martinez v. Mukasey*, 519 F.3d 532 (5th Cir. 2008), to support his claim that he is eligible for a waiver under section 212(h) of the Act. In that case, the alien was admitted after inspection as a nonimmigrant visitor and subsequently adjusted his status to that of a lawful permanent resident under section 245A of the Act. The United States Court of Appeals for the Fifth Circuit rejected the application of *Matter of Rosas* and held that "for aliens who adjust post-entry to LPR status, § 212(h)'s plain language demonstrates unambiguously Congress' intent *not* to bar them from *seeking* a waiver of inadmissibility." *Id.* at 546. However, *Martinez* did not consider whether the same rule would apply in a case like the respondent's where the alien was not previously admitted. Indeed, if we were to literally apply the Fifth Circuit's holding to this case, the respondent would have no admission date at all. Given that the Fifth Circuit did not have to confront the factual scenario presented here, we are not persuaded by respondent's contention that *Martinez* should control.

Our conclusion receives further support from the Fourth Circuit's decision in *Aremu v. Department of Homeland Security*, 450 F.3d 578. In that case, the court explicitly noted that finding adjustment of status to be an admission might be justified because of the possible absurdities that would result from a contrary holding in cases such as this, where the alien has never been admitted within the meaning of section 101(a)(13)(A) of the Act. The court made this observation despite its disagreement with our holding in *Matter of Shanu* that the date an alien is lawfully adjusted for permanent residence also constitutes a "new" date of admission when the alien had previously been admitted in another status.

We reemphasize that *not* construing an alien's adjustment to lawful permanent residence to be an admission would have problematic consequences for other aliens. As we noted in *Matter of Rosas*, 22 I&N Dec. at 623, if we

do not consider adjustment to be an admission, "an alien who entered without inspection and resided in this country for many years as a permanent resident after adjustment of status under section 245A would be ineligible for relief under sections 212(c) or 240A(a) because he or she would not be considered to have been 'admitted' for permanent residence." We cannot read the same statutory language one way in the context of section 212(h) relief and another way in the context of cancellation of removal. If adjustment of status under section 245(a) of the Act did not constitute an admission for purposes of section 212(h), it follows that it also would not be an admission for purposes of cancellation of removal.

Resolving this interpretative dilemma as we do here is far more consistent with the overall structure of the Act regarding the eligibility of aliens for relief under the relevant provisions of section 212(h) and for other analogous relief, in particular, cancellation of removal under section 240A(a). Time in status has long been a factor in determining eligibility for relief, such as a waiver under former section 212(c) of the Act, 8 U.S.C. 1182(c) (1988), which required 7 years of "lawful unrelinquished domicile." In 1996, Congress established various "stop-time" rules for calculating the period of continuous residence or continuous physical presence required by sections 212(h) and 240A. *See, e.g.*, *Matter of Cisneros*, 23 I&N Dec. 668 (BIA 2004). Specifically, for relief under section 212(h), the "stop-time" rule is triggered by the initiation of proceedings. *See Matter of Rotimi*, 24 I&N Dec. 567 (BIA 2008).

The critical factor is not whether one acquired lawful permanent resident status through admission as an immigrant or through adjustment of status in the United States but is, instead, the time accrued in such status. A contrary rule would not only allow aliens who have been admitted to lawful permanent resident status through the process of adjustment to avoid the effect of the "stop-time" rule. It would also allow such aliens, who currently comprise a substantial majority of all those admitted to lawful permanent resident status,[3] to forever avoid the effect of the aggravated felony bar in section 212(h). There is no indication that Congress intended the limitations it built into section 212(h) to apply to those aliens whose previous admission to lawful permanent resident status occurred through the overseas consular process, but not to the majority of aliens whose admission occurred through adjustment of status.

---

[3] For example, in fiscal years 2007 to 2009, close to 60 percent of those who obtained lawful permanent resident status did so through the process of adjustment of status. *See* Randall Monger, Office of Immigration Statistics, Department of Homeland Security, *Annual Flow Report - U.S. Legal Residents: 2009* 2, Table 1 (Apr. 2010), *available at* http://www.dhs.gov/xlibrary/assets/statistics/publications/lpr_fr_2009.pdf.

Therefore, the critical concern is the alien's length of residence in lawful permanent resident status, rather than the mechanism by which he or she was "admitted" to that status. The respondent is ineligible for section 212(h) relief because he engaged in conduct that rendered him inadmissible within a few years of his adjustment. Another alien who engaged in similar conduct more than 7 years after adjustment would be eligible for a waiver. For example, under our analysis a lawful permanent resident who has lived in the United States for more than 7 years and becomes inadmissible because of a criminal conviction may have an opportunity to remain in this country, even where the conviction would otherwise result in removal, whereas an alien with a similar conviction who recently became a lawful permanent resident would not. Thus the emphasis is on the fact that the alien has been residing in this country as a lawful permanent for a long period of time, which has traditionally been considered a significant equity under the Act. *See, e.g.*, *Matter of Singh*, 24 I&N Dec. 331, 335 (BIA 2007); *Matter of Marin*, 16 I&N Dec. 581, 584-85 (BIA 1978).

## IV. CONCLUSION

The 7-year continuous residence requirement of section 212(h) of the Act applies to the respondent because his adjustment of status constitutes an admission and is the only possible date of admission, given that he entered without inspection. Because the respondent does not have the requisite 7 years of continuous residence, he is ineligible for a section 212(h) waiver. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.