NIEMEYER, Circuit Judge,
concurring in part and dissenting in part:
I concur in Part II.B of the majority’s opinion, holding that we lack jurisdiction to entertain objections to various discretionary determinations of the Board of Immigration Appeals (“BIA”). But I dissent from Part II.A. While the majority has perhaps set forth a plausible construction of § 212(h) of the Immigration and Nationality Act (“INA”), 8 U.S.C. § 1182(h), its construction is not the only, or even the most, plausible construction. Indeed, I conclude that the different construction given to § 212(h) by the BIA is not only plausible but is more consistent with the other provisions of the INA. But choosing the best construction is not our task. When a statute yields two plausible constructions, we should defer to the agency, especially when the statute pertains to immigration matters. See Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S.Ct. 1439, *391 143 L.Ed.2d 590 (1999). Accordingly I would affirm.
I
Bracamontes, a native of Mexico who illegally entered the United States in 1976 when he was two, was granted temporary resident status in 1987. Shortly thereafter, in June 1988, Bracamontes left the United States for a short visit to Mexico, returning as a lawful temporary resident. After returning, in May 1990, Bracamontes’ status was adjusted to that of a lawful permanent resident.
In 1999, Bracamontes pleaded guilty to a Virginia state charge of malicious wounding, for which he served several years in prison. After his discharge, he married a United States citizen, with whom he has had three children, now teenagers.
In 2009, the Department of Homeland Security (“DHS”) commenced removal proceedings against Bracamontes because he was an alien who, after admission, was convicted of an aggravated felony. While Bracamontes conceded removability, he indicated that he would apply for an adjustment of status as the husband of a U.S. citizen and for a waiver under § 212(h) of the application of his aggravated felony, which otherwise would require his removal. The DHS sought to pretermit Bracamontes’ applications for adjustment of status and waiver under § 212(h) because he was ineligible for a waiver according to the BIA’s construction of § 212(h). The immigration judge granted DHS’s motion to pretermit Bracamontes’ applications, and the BIA affirmed.
Bracamontes now seeks a petition for review, arguing that he qualified for a waiver under § 212(h), contrary to the BIA’s interpretation of that section.
II
The issue in this case turns on the proper construction of § 212(h) to determine whether Bracamontes qualifies for a waiver of the application of his aggravated felony conviction. The controlling language of § 212(h) states:
No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if ... since the date of such admission the alien has been convicted of an aggravated felony____
8 U.S.C. § 1182(h) (emphasis added).
The DHS contends that the language denying waiver to an “alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence” includes an alien whose status has been adjusted to that of lawful permanent resident. It relies not only on the definition of “lawfully admitted for permanent residence,” see INA § 101(a)(20), 8 U.S.C. § 1101(a)(20), which means “the status of having been lawfully accorded the privilege of residing permanently in the United States” (emphasis added), but also the BIA’s established position, as reflected in Matter of Koljenovic, 25 I. & N. Dec. 219 (BIA 2010).
Bracamontes, on the other hand, contends that the language denying waiver applies only to aliens “admitted” at the border as a lawful permanent resident, i.e., an alien who has entered the United States as a lawful resident alien, as “admitted” is defined in INA § 101(a)(13)(A). Specifically, that provision defines “admitted” as “the lawful entry of the alien into the United States after inspection and authorization by an immigration officer” (emphasis added). He argues that because he never entered the United States as a lawful permanent resident, but rather in 1988 *392 as a lawful temporary resident, the waiver bar does not apply to him.
The majority opinion recognizes that if § 212(h) is ambiguous, we should defer to the BIA under the Chevron doctrine and that such deference is “especially appropriate” with respect to immigration matters. Ante, at 384. But it reads § 212(h) to be unambiguous, and its unambiguous reading is contrary to the one that has been adopted by the BIA. The majority states, “the definition of ‘admission’ provided by Congress simply does not include an adjustment of status.” Ante, at 386. The majority’s basis for finding the “plain meaning” turns on the fact that § 212(h) uses the stand-alone term “admitted,” which is defined by § 101(a)(13)(A) in terms of “entry.” See ante, at 385-86. Most of the majority opinion proceeds as though this proposition was obvious. See, e.g., ante, at 386 (“[T]he statute plainly says what it says”). Indeed, the majority even proposes its own rewording of § 212(h) to incorporate the § 101(a)(13)(A) definition. See ante, at 385.
This approach, however, fails to recognize that another construction of § 212(h) can be made that is just as plausible and that is probably more rational in the larger context of the INA. Section 212(h) uses not only the defined terms “admitted” and “admission,” which are defined in § 101(a)(13)(A) to refer to the lawful entry of the alien after inspection, but it also uses the term “admitted” in the more specific phrase “lawfully admitted for permanent residence,” which is defined in § 101(a)(20) to refer to an adjustment of status. Thus, the list of definitions contained in § 101(a) includes a definition for “admitted” standing alone to refer to “entry” and a definition of “admitted” as included in the phrase “lawfully admitted for permanent residence” to refer to “status” — more particularly “the status of having been lawfully accorded the privilege of residing permanently in the United States.” 8 U.S.C. § 1101(a)(20) (emphasis added). Of course, this definition of “lawfully admitted for permanent residence” accurately describes Bracamontes’ circumstances because he became a lawful permanent resident by an adjustment of status in 1990.
The BIA has recognized the ambiguity of § 212(h) created by the two different definitions of “admitted” — one defining “admitted” to refer to “entry” and the other defining “admitted” to refer to “status.” But it resolved the ambiguity to read § 212(h) to be consistent with other provisions of the INA and with the apparent intent of Congress. The BIA did not find the problem to be insurmountable, because “[adjustment of status is essentially a proxy for inspection and permission to enter at the border, which is given as a matter of administrative grace.” Koljenovic, 25 I. & N. Dec. at 221; see also Matter of Rainford, 20 I. & N. Dec. 598, 601 (BIA 1992) (“As we have repeatedly held, an adjustment of status is merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States”).
The BIA has also catalogued a litany of interpretive and policy reasons to support its construction, including the absurdity that would result if individuals who were never admitted at the border, but who later adjusted to lawful permanent resident status, are deemed “lawfully admitted for permanent residence” under § 101(a)(20), but not “admitted” despite the fact that the word “admitted” appears in the phrase “lawfully admitted for permanent residence.” See Koljenovic, 25 I. & N. Dec. at 222.
Rather than rejecting Koljenovic outright, as its construction of § 212(h) would require, the majority attempts to draw a *393 distinction. It explains that Koljenovic involved an alien who had never legally entered at the border (and who therefore was never “admitted” as the term is defined in § 101(a)(13)(A)), whereas the case now before us involves an alien who legally entered (and was “admitted”) with temporary status and who later adjusted to lawful permanent resident status without reentry. See ante, at 387-88. Thus, the majority allows that, if an alien with lawful permanent resident status has never previously been legally admitted at the border, the words “admitted” and “date of ... admission” in § 212(h) must be defined in terms of adjustment of status, as used in § 101(a)(20), rather than physical entry at the border, as used at § 101(a)(13)(A). The majority’s concession is a sensible one, but it is also fatal to its entire analysis. It proves that the linguistic necessity of construing “admitted” in § 212(h) by reference to § 101(a)(13)(A) is not so obvious after all, and it directly subverts the majority’s bold attempt to reword § 212(h) to fit its “unambiguous” interpretation.
Another consideration that weighs strongly in favor of the BIA’s approach is that Congress gave “no indication that [it] intended the limitations it built into section 212(h) to apply to those aliens whose previous admission to lawful permanent resident status occurred through the overseas consular process, but not to the majority of aliens whose admission occurred through adjustment of status.” Koljenovic, 25 I. & N. Dec. at 224. It is difficult to fathom why Congress would have wished to bar aliens who lawfully entered the United States with lawful permanent resident status from reaping the benefits of § 212(h) while permitting aliens who illegally entered the country from doing so. The resulting incentives would be exactly backwards. Despite an effort to rationalize this distinction, the majority leaves us with little more than a reassurance that its construction of § 212(h) would survive rational basis scrutiny. See ante, at 388-89 & n. 5.
Indeed, it may be noted that in rejecting the BIA’s holding in Koljenovic, the majority has created even a more serious problem than it has acknowledged. As the majority construes it, § 212(h) not only rewards illegal entrants over legal ones, but it also rewards a subset of legal entrants over another subset of legal entrants, with no discernable reason. Specifically, the majority’s approach rewards those such as Bracamontes, who lawfully entered the United States in 1988 having no lawful permanent resident status and subsequently adjusted to lawful permanent residence status, over those who lawfully entered with lawful permanent resident status in the first place.
Were we given the choice as to which construction of § 212(h) should be applied, we should undoubtedly find the BIA’s construction far more satisfactory in that it not only satisfies the reasonableness standard but also gives full effect to Congress’ purposes in view of the “overall structure of the Act.” Koljenovic, 25 I. & N. Dec. at 224; cf. Schafer v. Astrue, 641 F.3d 49, 57-58 (4th Cir.2011) (reviewing congressional purpose and legislative history at Chevron step one). But what we would choose on the matter is quite irrelevant. Presented with the indisputable ambiguity of § 212(h), we must defer to the BIA under the principles of Chevron.
Chevron deference lies at “the heart of modern administrative law” because it “ensures that agency officials, who are subject to greater political accountability and possess greater relevant expertise than judges, take the lead in implementing programs delegated to their care.” Schafer, 641 F.3d at 61. These considerations have special force in relation to the INA, be *394 cause immigration law involves “especially sensitive political functions that implicate questions of foreign relations.” Aguirre-Aguirre, 526 U.S. at 425, 119 S.Ct. 1439. Thus, it does not matter whether we agree with the BIA’s construction of the INA. See Saintha v. Mukasey, 516 F.3d 243, 253 (4th Cir.2008). If the statute is “ambiguous” with respect to the interpretive question presented, then we must defer to the agency’s approach so long as it is “reasonable.” Nat'l Elec. Mfrs. Ass’n v. U.S. Dep’t of Energy, 654 F.3d 496, 504 (4th Cir.2011).
Because § 212(h) is indisputably ambiguous and because the BIA’s resolution of the ambiguity is reasonable, I would defer to the BIA and accordingly affirm.