**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE MAURICIO ALANNIZ, *Petitioner*, | No. 15-72792 |
| v. | Agency No. A073-815-349 |
| WILLIAM P. BARR, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 12, 2019[*]
Pasadena, California

Filed May 20, 2019

Before: Dorothy W. Nelson and Consuelo M. Callahan,
Circuit Judges, and Edward R. Korman,[**] District Judge.

Opinion by Judge Callahan

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY[***]

### Immigration

On petition for review of a decision of the Board of Immigration Appeals, the panel denied Jose Alanniz's challenge to the pretermission of his application for cancellation of removal, holding that parole into the United States under 8 U.S.C. § 1182(d)(5) is not an "admission in any status" for purposes of meeting the residency requirement for cancellation of removal, and remanded his asylum application for further fact-finding.

To be eligible for cancellation of removal for certain permanent residents, an applicant must establish, as relevant here, that he or she has "resided in the United States continuously for 7 years after having been admitted in any status." Because Alanniz's period of residency was deemed to end when he was convicted of a drug offense in 2006, he had to show that he had been "admitted in any status" by at least 1999. Although Alanniz did not adjust to lawful permanent resident status until 2000, he contended that he met the residency requirement because his 1997 grant of parole constituted being "admitted in any status." The BIA rejected that contention and found him ineligible for cancellation.

The panel held that Alanniz's parole was not an admission and, therefore, he was not "admitted in any status" until his later adjustment to lawful permanent resident status.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel explained that it was bound by *Medina-Nunez v. Lynch*, 788 F.3d 1103 (9th Cir. 2015), in which this court deferred to the BIA's reading of "admitted in any status" as meaning that a person has been "admitted," as defined in 8 U.S.C. § 1101(a)(13)(A). In *Medina-Nunez*, the court also deferred to the BIA's decision that acceptance into the Family Unity Program was not such an admission. Because the court held in *Medina-Nunez* that the BIA's determination that even a specialized parole, such as acceptance into the Family Unity Program, did not constitute an admission, the panel concluded that Alanniz could not prevail on his argument that his 1997 parole constituted an admission. Accordingly, the panel concluded that Alanniz failed to obtain the seven years of continuous residency required for cancellation.

The panel also rejected Alanniz's contention that his case should be remanded on the ground that his 1997 parole document was not part of the administrative record, and held that Alanniz's brief to the BIA did not challenge the denial of relief under the Convention Against Torture.

Finally, the panel acceded to the parties' request to remand Alanniz's asylum claim to the agency to allow an Immigration Judge to undertake the initial fact-finding necessary to determine the viability of Alanniz's proposed group, as defined by Alanniz.

---

## COUNSEL

Mackenzie W. Mackins, Mackins & Mackins LLP, Sherman Oaks, California, for Petitioner.

M. Jocelyn Lopez Wright, Senior Litigation Counsel; Leslie McKay, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

CALLAHAN, Circuit Judge:

Jose Alanniz, a native and citizen of Mexico, entered the United States without inspection in 1986, received parole in 1997, and adjusted to lawful permanent resident ("LPR") status in 2000. He was convicted of a crime involving cocaine in 2006. He admitted to being removable, but asserted that he was eligible for cancellation of removal based on continuous residency in the United States for more than seven years. The Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's (IJ) pretermission of his application for cancellation of removal holding that Alanniz's continuous residency did not commence with the 1997 parole, but with his 2000 adjustment to LPR status. We agree and affirm the pretermission of his application for cancellation of removal. However, at the parties' mutual request, we remand Alanniz's asylum application for the fact-finding necessary to determine the viability of Alanniz's proposed social group.

## I

Alanniz, a native and citizen of Mexico, was born on March 19, 1982. He claims that his parents brought him into the United States without inspection in 1986. He adjusted his status to LPR in August 2000. At the time of his removal hearing, he was unmarried and had four United States citizen

children (born in 2000, 2003, 2005, and 2009). His parents
and siblings are either citizens or LPRs.

A parole document dated October 10, 1997, paroled
Alanniz "into the country for adjustment of status purposes,
. . . until October 9, 1998."[1] Although this document was not
placed in the certified record of this petition for review,
Alanniz's primary contention before us is that the document
constitutes an "admission" into the United States for the
purpose of beginning the seven years of continuous residence
necessary to qualify for discretionary cancellation of removal
pursuant to 8 U.S.C. § 1229b(a)(2).

In 2002, Alanniz was convicted of possession of a
controlled substance, cocaine, in violation of California law
and sentenced to three years probation. Then in 2006,
Alanniz was convicted of violating a California criminal
statute by being under the influence of cocaine and sentenced
to 140 days in jail. Removal proceedings were initiated
against Alanniz in 2012 based on his 2002 conviction. At the

---

[1] At a hearing before an IJ on April 23, 2012, counsel for the
Department of Homeland Security ("DHS") stated:

> In fact, off the record we went through the whole file to
> see if there was any other lawful entry and this is the
> only one. This is the earlier of the two. There was, so
> this one was issued on October 10, 1997. And he
> actually used the October 12, 1997 and it was a parole
> document paroling him into the country for adjustment
> of status purposes, paroled until October 9, 1998. And
> then I did see another application for travel on the Form
> I-131 and that was approved March 16, 1999. So that's
> after. So this is the, and there is no evidence that, that
> one was used. So, the October 10, 1997 is the earliest
> document that I found.

conclusion of a June 12, 2012 hearing before an IJ, the IJ issued an oral decision sustaining the charge of removability and ordering Alanniz removed to Mexico. Alanniz appealed to the BIA which dismissed his appeal, and he then filed a petition for review with the Ninth Circuit.

While his petition was pending before the Ninth Circuit, Alanniz filed a motion to reopen with the BIA asserting that, in October 2012, a California Superior Court had amended the 2002 criminal complaint against Alanniz so that it no longer identified the controlled substance. The BIA granted reopening, vacated its previous order, and remanded the case to the IJ for further proceedings. We then dismissed Alanniz's petition for review for lack of jurisdiction.

In the reopened proceedings, DHS amended the Notice to Appear substituting Alanniz's 2006 drug conviction for the 2002 conviction. In a January 22, 2014 order, the IJ denied Alanniz's requests for relief. Alanniz admitted that he was removable but sought cancellation of removal, asylum, and relief under the Convention Against Torture ("CAT").

The IJ granted DHS's motion to pretermit Alanniz's application for cancellation of removal. The IJ was not persuaded by Alanniz's argument that his 2002 conviction no longer disqualified him from cancellation of removal, but found that it was "undisputed" that Alanniz had been convicted of a controlled substance related offense in 2006, and that the substance had been cocaine.[2] Accordingly, to be

---

[2] Alanniz argued that the removal of the reference to cocaine in his 2002 conviction made the conviction inconclusive as to the identity of the substance and rendered him eligible for cancellation of removal, citing *Moncrieffe v. Holder*, 569 U.S. 184 (2013). Respondent does not agree

eligible for cancellation, Alanniz had to show "that he was 'admitted' and resid[ed] in the U.S. since at least 1999." However, the IJ found that his initial entry was without inspection, and his "first 'admission' was when he adjusted his status to a lawful permanent resident on August 3, 2000."

The IJ proceeded to deny Alanniz's request for asylum noting that, even accepting that he provided credible testimony, Alanniz's concern that "he will be targeted for harm by the drug cartels and other criminals in the country" was a generalized fear of harm by criminals and not harm on account of a protected ground. The IJ also denied relief under the CAT noting that there was "no claim or evidence that the respondent was harmed, much less tortured in the past."

Alanniz's appeal to the BIA was dismissed on August 11, 2015. The BIA agreed with the IJ that Alanniz was statutorily ineligible for cancellation of removal because his 2006 conviction came before he had achieved seven years of continuous presence in the United States. The BIA stated: "A grant of parole pursuant to section 212(d)(5)(A) of the Act 'shall not be regarded as an admission of the alien.'"[3]

_____

that Alanniz's 2002 conviction does not trigger the stop-time rule. Respondent, however, maintains that "the issue simply is not before the Court because although the immigration judge decided the issue against Mr. Alanniz . . . the Board did not reach that issue in view of its dispositive determination that the 2006 drug offense was sufficient to stop Mr. Alanniz's accrual of continuous residence."

[3] 8 U.S.C. § 1182(d)(5)(A) states:

> The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a

The BIA also denied Alanniz's application for asylum noting that he had "defined his particular social group based upon his assertion that members of the group are subject to kidnappings and extortion upon arrival in Mexico." It held that it is "well established" that asylum cannot be based on "fear of harm resulting from general conditions of violence and civil unrest affecting the home country's populace as a whole." Finally, the BIA noted that Alanniz had not challenged the IJ's determination that he was not eligible for protection under the CAT. Alanniz filed a timely petition with this court on September 9, 2015.

## II

We review only the BIA's decision except to the extent the decision adopts or relies on the IJ's reasoning, in which case we review both the IJ's and the BIA's decisions. *Agyeman v. INS*, 296 F.3d 871, 876 (9th Cir. 2002); *Saldivar v. Sessions*, 877 F.3d 812, 814 (9th Cir. 2017). We review the BIA's determination of questions of law de novo, subject to established principles of deference. *See Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 932, 934 (9th Cir. 2007)

---

case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, *but such parole of such alien shall not be regarded as an admission of the alien* and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

(emphasis added).

(we "review de novo claims of due process violations in immigration proceedings" and "defer to an agency's interpretation of its own regulation when that interpretation is neither clearly erroneous nor inconsistent with the regulation.") (quotation marks omitted).

**A. Alanniz has not shown that his 1997 parole constitutes an "admission in any status" as that term is used in 8 U.S.C. § 1229b(a)(2).**

Title 8 U.S.C. § 1229b(a) allows the Attorney General to cancel the removal of certain permanent residents who have "resided in the United States continuously for 7 years after having been admitted in any status" and have "not been convicted of any aggravated felony." Section 1229b(d)(1) provides that the "period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States. . . ." Alanniz does not contest that his 2006 conviction, specifying the controlled substance for which he was convicted, makes the conviction one that is referred to in § 1182(a) and renders Alanniz removable under § 1227(a)(2). Accordingly, Alanniz's eligibility for cancellation of removal turns on whether he accrued the requisite seven years of continuous residence prior to his violation of California law on February 4, 2006, for being under the influence of cocaine.

Alanniz contends that he meets the residency requirement because his 1997 parole constitutes "admitted in any status" as that term is used in § 1229b. He recognizes that 8 U.S.C. § 1101(a)(13)(A) defines "admission" and "admitted" to mean "the lawful entry of [an] alien into the United States

after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). But he asserts that in *Garcia v. Holder*, 659 F.3d 1261 (9th Cir. 2011), and *Garcia-Quintero v. Holder*, 455 F.3d 1006 (9th Cir. 2006), we gave "admission in any status" a broader meaning.

It is true that in *Garcia-Quintero*, "we concluded that Garcia-Quintero's acceptance into the Family Unity Program ("FUP") rendered him 'admitted in any status' for purposes of eligibility for cancellation of removal," *Garcia*, 659 F.3d at 1269. But we explained in *Guevara v. Holder*, 649 F.3d 1086 (9th Cir. 2011), that this was because "the FUP was enacted by Congress to assist a very narrow group of aliens," and we declined to extend "admitted in any status" to all "aliens who receive employment authorization." *Id.* at 1092–93.

In *Garcia*, we held that Garcia's parole as a Special Immigrant Juvenile ("SIJ"), like Garcia-Quintero's enrollment in FUP, constituted "admitted in any status" and thus Garcia was eligible for cancellation of removal under § 1229b(a)(2). 659 F.3d at 1272. However, we emphasized that Congress had extended certain protections to the "narrow groups" of FUP participants and SIJ parolees, and that our holding did not extend to broader groups. *Id.* at 1271. Thus, because our judicial expansion of "admitted in any status" was based on unique features of the FUP and SIJ programs, it is doubtful that they support Alanniz's contention that his 1997 parole constituted an admission.

But that question is only of academic interest because *Garcia* and *Garcia-Quintero* have been repudiated by the BIA and we have accepted the BIA's narrower reading of "admitted in any status" as reasonable.

*In re Reza-Murillo*, 25 I. & N. Dec. 296 (BIA 2010), presented a similar situation to that faced by Garcia-Quintero. Reza-Murillo was granted LPR status in August 2001, and committed a crime involving moral turpitude in November 2001. *Id*. at 296–97. He argued that he nonetheless was eligible for cancellation of removal because his continued residence in the United States started when he was granted benefits under the FUP in 1994. *Id*. The BIA rejected this argument and rejected the Ninth Circuit's analysis in *Garcia-Quintero*. *Id*. at 298. The BIA cited 8 U.S.C. § 1101(a)(13)(A) as defining "'admitted' as 'the lawful *entry* of the alien into the United States *after* inspection and authorization by an immigration officer.'"[4] *Id*. at 297. It determined that declining to treat a grant of FUP benefits as an "admission" was "consistent with the statutory scheme and does not create absurd or bizarre results." *Id.* at 299. Accordingly, the BIA declined "to deem a grant of FUP benefits to be an 'admission'" and dismissed Reza-Murillo's appeal. *Id*. at 299–300.

In *Medina-Nunez v. Lynch*, 788 F.3d 1103 (9th Cir. 2015), we acknowledged that *Reza-Murillo* was contrary to *Garcia-*

---

[4] The BIA commented that

> [t]he Act's favorable treatment of aliens granted lawful permanent resident status does not suggest that aliens granted any lesser immigration status should be deemed to have been "admitted" by virtue of obtaining that lesser status while present in the United States. Such a conclusion would effectively redact the words "entry of the alien into the United States after" from the definition of "admission" in section 101(a)(13)(A) of the Act.

*Reza-Murillo*, 25 I. & N. Dec. at 299.

*Quintero*, and accepted the BIA's ruling as controlling. We explained:

> We also have no trouble concluding that the BIA's decision in *In re Reza-Murillo* is "otherwise entitled to *Chevron* deference." [*National Cable & Telecommunications Ass'n v. Brand X Internet Servs*., 545 U.S. 967, 982 (2005) ("*Brand X*")]. It is reasonable for the BIA to apply the statutory definition of the term "admitted." Nothing in the statutory text, the BIA's cases, or our own cases precludes the BIA from relying on that definition.
>
> Pursuant to *Brand X*, we must afford *Chevron* deference to the BIA's decision in *In re Reza-Murillo* holding that acceptance into the Family Unity Program does not constitute an admission for purposes of § 1229b(a)(2). The BIA therefore correctly denied Petitioner's application for cancellation of removal.

*Medina-Nunez*, 788 F.3d at 1105–06; *see also Lopez v. Lynch*, 610 F. App'x 668, 668–69 (9th Cir. 2015) (unpublished) (acknowledging abrogation of *Garcia-Quintero*).

We are bound by *Medina-Nunez*. *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc); *Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1275 (9th Cir. 2018) (holding that a three-judge panel "has no power to overrule circuit precedent"). Because we have held the BIA's determination that even a specialized parole, such as acceptance into the FUP program, does not constitute an

admission, Alanniz cannot prevail on his argument that his 1997 parole constitutes an admission under § 1229b(a)(2).

Moreover, this holding is consistent with case law upholding 8 U.S.C. § 1101(a)(13)(B) which states that "an alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted."    Similarly, § 1182(d)(5)(A), which confers upon the Attorney General the authority to parole aliens into the United States, provides that "such parole of such alien shall not be regarded as an admission of the alien."    We have previously held that pursuant to these statutes, an individual paroled pursuant to § 1182(d)(5) has not been admitted into the United States. *See, e.g.*, *Altamirano v. Gonzales*, 427 F.3d 586, 590–91 (9th Cir. 2005) (agreeing with the government that parole status under § 1182(d)(5)(A) shall not be regarded as an admission); *see also Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) (stating that "[t]he parole of aliens seeking admission is simply a device through which needless confinement is avoided . . . was never intended to affect an alien's status," and to hold that a noncitizen's parole placed him legally within the United States "is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court."). Accordingly, pursuant to our opinion in *Medina-Nunez*, as well as judicial precedent construing 8 U.S.C. §§ 1101(a)(13)(B) and 1182(d)(5), Alanniz's 1997 parole was not an admission for purposes of § 1229b.

**B. Alanniz is not entitled to any relief because the administrative record does not include his 1997 parole document.**

Alanniz asserts that his case should be remanded because it is unclear what manner of parole he was granted on October 12, 1997. He argues that 8 U.S.C. § 1229a(b)(4)(C) imposes a duty upon the government to keep a complete administrative record and the type of parole is "critical to the larger question of his eligibility for relief from removal." He posits that we cannot make a reasoned decision without this information. The argument is not persuasive for several reasons.

First, Respondent makes a sound argument that Alanniz has forfeited any objection concerning the status of the administrative record because he did not object to the absence of the 1997 parole document from the record either before the IJ or the BIA. *See* 8 U.S.C. § 1252(d)(1) (providing that a court may review a final order of removal "only if . . . the alien has exhausted all administrative remedies available to the alien as of right."). In the agency proceedings, Alanniz was allowed to argue on the existing record that his 1997 parole constituted an admission, and he never objected to the fact that the document was not in the record. Alanniz should not now be allowed to challenge the sufficiency of the record.

Second, Alanniz overstates Respondent's responsibility for producing information. We have held that "[i]n the removal context, the government bears the burden of establishing deportability," but that the "REAL ID Act places the burden of demonstrating eligibility for cancellation of

removal squarely on the noncitizen."**5** *Young v. Holder*, 697 F.3d 976, 988–89 (9th Cir. 2012) (en banc), *abrogated in part on other grounds by Moncrieffe v. Holder*, 569 U.S. 184 (2013); *see also Gutierrez v. Sessions*, 887 F.3d 770, 779 (6th Cir. 2018) (holding that "[o]nce her removability has been demonstrated, for which the government bears the burden of proof, . . . it is the applicant for relief who must 'prov[e] by a preponderance of the evidence that potential grounds for mandatory denial of . . . relief' in fact 'do not apply' in her case."). The record contains the evidence on which the government sought Alanniz's removal. Alanniz does not allege that the record is incomplete.**6** Thus, because it was Alanniz's burden to establish his eligibility for cancellation of removal, he cannot complain that the government failed to produce the 1997 parole document, which he never requested.

Third, Alanniz has not shown that the absence of the 1997 parole document from the record was in any way prejudicial. *See Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005) ("For us to grant the petition for review on due process grounds, Petitioner must show prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation.") (quotation marks and emphasis omitted). Alanniz does not contest the evidence in the record that at his

---

**5** 8 U.S.C. § 1229a(c)(4) states that "[a]n alien applying for relief or protection from removal has the burden of proof to establish that the alien—(i) satisfies the applicable eligibility requirements; and (ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion."

**6** Section 1229a(b)(4)(C) provides that "a complete record shall be kept of all testimony and evidence produced at the proceeding." Alanniz does not allege that the administrative record does not include all the evidence that was actually produced.

2012 hearing his attorney reviewed the parole document and demurred to Respondent's statement that it was a Form I-131 application to allow travel. Moreover, Alanniz offers no suggestion as to how the particular language in the 1997 document would have any impact on his case. Indeed, under our controlling precedent of *Medina-Nunez*, it does not matter what type of parole issued in 1997, because whatever its nature it does not constitute an admission.

In sum, even if Alanniz has not forfeited his right to challenge the absence of the 1997 parole document from the record, he is not entitled to relief because (a) it was his responsibility to request the document, which he failed to do, and (b) the absence of the document was not prejudicial to Alanniz.

### III

Alanniz asserts that the BIA erred in holding that he did not challenge the IJ's determination that he was not eligible for protection under the CAT. He cites 8 C.F.R. § 1208.13(c)(1) as providing that asylum applications filed after April 1, 1997 "shall also be considered for eligibility for withholding of removal under the Convention Against Torture if the applicant requests such consideration or if the evidence presented by the alien indicates that the alien may be tortured in the country of removal." Alanniz claims that he mentioned the CAT in his brief to the BIA, and that he need not use precise legal terminology or provide a well-developed argument to meet the exhaustion requirement.

The BIA properly found that Alanniz did not challenge the IJ's determination that he was ineligible for protection

under the CAT.**[7]**  We have held that where an applicant files a brief before the BIA, "the BIA is entitled to look to the brief for an explication of the issues that petitioner is presenting to have reviewed.  Petitioner will therefore be deemed to have exhausted only those issues he raised and argued in his brief before the BIA." *Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009) (en banc).  A review of Alanniz's brief to the BIA confirms that he did not argue that he was entitled to relief under the CAT.**[8]**  Moreover, it does not appear that Alanniz has proffered any evidence of past torture.  Alanniz has not shown that the BIA erred in concluding that he had not challenged the IJ's denial of relief under the CAT.

## IV

Alanniz also argues that the IJ mischaracterized his proposed social group as "returning Mexicans from the U.S.," and that he alleged a narrower group consisting of Mexican long-term residents of the United States, not Mexicans from the United States generally.  The BIA redefined the group as "long term residents of the U.S. who have been deported to Mexico and will be subject to kidnappings and extortion upon arrival in Mexico."  Alanniz objects that this amounted to improper fact-finding, which the BIA is not entitled to do, and contends that this issue should be remanded so that the IJ can address the social group proposed by Alanniz.

---

**[7]** Alanniz's reliance on 8 C.F.R. § 1208.31(c) is misplaced.  The regulation addresses the scope of an application for asylum, but does not allow an applicant to reassert before us an issue he did not raise before the BIA.

**[8]** The CAT was mentioned only twice in Alanniz's brief to the BIA, in the introduction and in the conclusion.  The brief contained no argument for relief under the CAT.

Respondent concedes that the IJ mischaracterized Alanniz's proposed social group as "returning Mexicans from the United States," when Alanniz had defined his proposed group as "long term residents of the U.S. who have been deported to Mexico and will be subject to kidnappings and extortion upon arrival in Mexico." Respondent asserts that whether a proposed social group constitutes a particular social group is a question of law, but the cognizability of a putative social group also contains factual issues, citing *Pirir-Boc v. Holder*, 750 F.3d 1077, 1081 (9th Cir. 2014). Respondent requests a remand of Alanniz's request for asylum "so that the agency may conduct a case-specific analysis of the documentary evidence Mr. Alanniz submitted to the immigration judge."

Because the proposed group as understood by the IJ is somewhat different from the group proffered by Alanniz, we accede to the parties' request and remand this issue to the agency. Alanniz is entitled to have the IJ first consider the facts that define his proposed group, and neither the BIA nor the Ninth Circuit is authorized to undertake the initial fact-finding necessary to determine the viability of the group. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (stating the general rule that "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands"); 8 C.F.R. § 1003.1(d)(3)(iv) (stating that the BIA "will not engage in factfinding in the course of deciding appeals").

## V

We hold that our acceptance in *Medina-Nunez*, 788 F.3d 1105, of the BIA's definition of "admitted in any status" in *Reza-Murillo*, 25 I. & N. Dec. at 298–99, compels the

conclusion that Alanniz's 1997 parole did not constitute an "admission." It follows that, because Alanniz was not "admitted in any status" until his adjustment to LPR in 2000, and because he was convicted for being under the influence of cocaine in 2006, he had not obtained the requisite seven years of continuous residency in the United States to be eligible for cancellation of removal under 8 U.S.C. §1229b. The BIA properly determined that Alanniz is not eligible for cancellation of removal.

To the extent that Alanniz's failure to object before the IJ or the BIA to the absence of the 1997 parole document from the record does not constitute a forfeiture of his right to raise the issue, his objection is not meritorious. Requesting the production of the document was part of his burden to demonstrate eligibility for cancellation of removal. Moreover, Alanniz has failed to show any prejudice from the absence of the parole document because the 1997 parole did not constitute an "admission" regardless of the nature of the parole. We also hold that the BIA properly determined that Alanniz's brief to the BIA did not challenge the IJ's denial of relief under the CAT. *See Abebe*, 554 F.3d at 1208.

Finally, we accede to the parties' request to remand Alanniz's asylum claim to the agency to allow an IJ to undertake the initial fact-finding necessary to determine the viability of Alanniz's proposed group, as defined by Alanniz.

Alanniz's challenge to the pretermission of his application for cancellation of removal is **DENIED** and his asylum application is **REMANDED** for further fact-finding. Each side shall bear its own costs.