**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 19 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

MARIELA CHAVEZ RAMOS; CINTHIA GUADALUPE HERNANDEZ CHAVEZ; BRAYAN CHAVEZ RAMOS; KAMILA GONZALEZ CHAVEZ,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No.   20-70856

Agency Nos.   A209-163-662
A209-163-663
A209-163-664
A209-163-665

MEMORANDUM[*]

---

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 11, 2021[**]
San Francisco, California

Before:  WALLACE and COLLINS, Circuit Judges, and RAKOFF,[***] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

Mariela Chavez Ramos, a native citizen of Mexico, petitions for review of the Board of Immigration Appeals' (Board) decision affirming the Immigration Judge's (IJ) denial of her application for asylum, withholding of removal, and relief pursuant to the Convention Against Torture (CAT). She also challenges the denial of her minor children's derivative applications. We have jurisdiction pursuant to 8 U.S.C. § 1252. We deny the petition.

## I.

Chavez Ramos asserts that the Knights Templar extorted and attempted to recruit her husband, Juan Ramon Gonzalez Alcantar.[1] She also believes the cartel members murdered him when he refused. She alleges that two cartel members told her that they would not have killed her husband if he had cooperated with them. The local authorities provided protection to her and her minor children for a period of time after Gonzalez Alcantar's death. Chavez Ramos did not ask for additional protection after the police presence tapered off. Due to the cartel's continued crossings across her family's ranch, Chavez Ramos and her children came to the United States and applied for asylum, withholding of removal, and CAT relief upon

---

[1] Gonzalez Alcantar was not legally Chavez Ramos's husband because they were not formally married, although she refers to him as her husband at points during her testimony before the IJ. Regardless, the IJ and the Board (collectively, the Agency) accepted that Gonzalez Alcantar was Chavez Ramos's husband, so we do the same. Gonzalez Alcantar's name is also spelled one of two ways throughout the record: Gonzalez Elcontar and Gonzalez Alcantar. We have chosen to use the latter because it was used on official records from Mexico.

entry at the border. Chavez Ramos's children are derivative applicants, and their applications are identical and affixed to their mother's application.

Before the Agency, Chavez Ramos contended she belongs to one of the following particular social groups: (1) the family of her late husband; (2) single women without familial protection; or (3) single women in Mexico without familial protection who have refused to cooperate with cartels. Chavez Ramos testified before the IJ that she did not believe she could safely relocate to another part of Mexico because her other family members could not house her, and she would not be able to get a job where they lived. The IJ found Chavez Ramos sufficiently credible but denied her and her children's applications.

The IJ held that Chavez Ramos's first proposed particular social group was cognizable and agreed that she was a member of the Gonzalez Alcantar's family, but the IJ determined that Chavez Ramos failed to show a nexus between her proposed particular social group and the alleged harm. The IJ also held that Chavez Ramos had failed to establish past persecution against her and her children or an objectively reasonable fear of future persecution from the Knights Templar if the family returned to Mexico. The Board affirmed. We hold that substantial evidence supports the Agency's conclusions.

## II.

First, substantial evidence supports the Agency's conclusion that Chavez

3

Ramos and her children did not suffer past persecution from the Knights Templar because the alleged harm happened to Gonzalez Alcantar rather than the family as whole. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1074–76 (9th Cir. 2004) (considering evidence of violence against a family member where it "add[ed] additional strength to [petitioner's] claim of past persecution because it demonstrated that the danger threatened by the [alleged persecutors'] menacing behavior [against petitioner] was real"). Chavez Ramos also does not allege that she or her children were directly threatened or extorted by the Knights Templar. Instead, she relies upon a single comment from two individuals she contends belonged to the Knights Templar as to why Gonzalez Alcantar was targeted.

We hold that this comment was more akin to a declaration rather than a threat; even if it was a threat, it was unfulfilled. *See Lim v. I.N.S.*, 224 F.3d 929, 936 (9th Cir. 2000) (observing that unfulfilled threats, standing alone, "constitute past persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm.") (citation and quotation marks omitted). This alleged interaction, therefore, does not compel a finding of past persecution. *See Ghaly v. I.N.S.*, 58 F.3d 1425, 1431 (9th Cir. 1995) ("[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive.") (citation and quotation marks omitted). In addition, the cartel's use of the ranch to cross to other parts of town does not rise to

4

the level of persecution because Chavez Ramos did not allege confrontations with the cartel members during their crossings beyond the single interaction. Finally, Chavez Ramos admitted that neither she nor her children had personally suffered harm in Mexico.

Second, substantial evidence supports the Agency's conclusion that Chavez Ramos failed to establish a well-founded fear of future persecution from the Knights Templar because she did not present evidence that she or her children would face a reasonable possibility of persecution if returned to Mexico. Her fears, therefore, were not objectively reasonable.[2] The cartel members' sole interest after Gonzalez Alcantar's death appears to have been driving through the Chavez Ramos ranch in Los Olivos. Moreover, Chavez Ramos failed to identify a specific harm if she and her children are returned to Mexico. She also did not explain what risk she faces in Mexico because of Gonzalez Alcantar's death. Therefore, the Agency correctly held that Chavez Ramos and her children do not have an objectively reasonable fear. *See Nagoulko v. I.N.S.*, 333 F.3d 1012, 1018 (9th Cir. 2003) (crediting petitioner's subjective fear but concluding it was "too speculative" and, thus, "not objectively reasonable under the circumstances of this case"). In the end, the Agency properly rejected Chavez Ramos's asylum and withholding of removal claims. She failed to

---

[2] We do not address Chavez Ramos's newly claimed fears for her daughters because they were not raised before the Agency.

establish either past persecution or a well-founded fear of future persecution. She and her children, therefore, are not eligible for asylum or withholding of removal.

Third, Chavez Ramos asserts that she and her children established a clear probability that the Knights Templar would torture her and her children if they were forced to return to Mexico, and Chavez Ramos insists the Mexican government, in general, is conspiring with cartels. We hold there is substantial evidence to support the Agency's holding that Chavez Ramos failed to prove a clear probability of torture or government acquiescence, so that she and her children are not entitled to CAT relief. As an initial matter, we observe that Chavez Ramos has not demonstrated government acquiescence to her hypothetical future torture. Chavez Ramos and her children received police protection shortly after Gonzalez Alcantar's death, and there is no evidence that the local police force would not have resumed their presence to protect her and her children if she had informed them that she felt threatened. This situation is, therefore, markedly different from other cases where we found government acquiescence. *See, e.g.*, *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1185–86 (9th Cir. 2020); *see also* 8 C.F.R. § 208.18(a)(7) (government acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity").

In addition, the Board correctly concluded that Chavez Ramos's evidence did

not demonstrate past harm "specifically directed" at her and that she, instead, relied on only a "generalized and speculative" fear of future harm. Chavez Ramos's reliance on generalized country conditions does not compel the conclusion that she "would face any particular threat of torture beyond that of which all citizens of [Mexico] are at risk." *See Dhital v. Mukasey*, 532 F.3d 1044, 1051–52 (9th Cir. 2008). Ultimately, substantial evidence supports the Board's determination that Chavez Ramos failed to establish a clear probability of torture by, or with the acquiescence or willful blindness of, a government official.

Finally, we hold that the Agency did not err by considering Chavez Ramos's minor children's applications as derivative of their mother's application. Chavez Ramos's children's claims are derivatives of Chavez Ramos's claims, and the question was conceded by her counsel before the IJ. The children's paperwork was comprised solely of separate cover pages that were then attached to their mother's application, so that they do not contain independent information. Insofar as Chavez Ramos's daughters' claims rely on distinct proposed particular social groups raised for the first time in this court, we cannot consider them. *See Alanniz v. Barr*, 924 F.3d 1061, 1069 (9th Cir. 2019). Any evidence introduced on appeal to support the belated, independent claims of the children is extra-record evidence. *See* 8 U.S.C. § 1252(b)(4)(A).

## III.

We hold that substantial evidence supports the Agency's conclusion that Chavez Ramos and her children are not eligible for asylum, withholding of removal, or CAT relief. We conclude that the Agency did not err by considering the children's applications as derivative of their mother's application.

**DENIED.**