**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 16 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NALLELY IRAZU BUENROSTRO RODRIGUEZ, <br><br> Petitioner, <br><br> v. <br><br> TODD BLANCHE, Acting Attorney General, <br><br> Respondent. | No. 21-1157 <br><br> Agency No. A206-167-327 <br><br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 20, 2026
Pasadena, California

Before: N.R. SMITH, BENNETT, and MENDOZA, Circuit Judges;
Dissent by Judge Mendoza.

Nallely Irazu Buenrostro Rodriguez, a citizen and native of Mexico,

petitions for review of an order by the Board of Immigration Appeals dismissing

her appeal of an Immigration Judge's denial of her application for asylum,

withholding of removal, and protection under the Convention Against Torture. We

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

Substantial evidence supports the agency's internal relocation finding. We review an internal relocation finding for substantial evidence because it is a finding of fact. *See Santana-Gonzalez v. Bondi*, 172 F.4th 736, 742-43 (9th Cir. 2026); *see also* 8 U.S.C. § 1252(b)(4)(B). "Relocation analysis consists of two steps: (1) 'whether an applicant could relocate safely,' and (2) 'whether it would be reasonable to require the applicant to do so.'" *Singh v. Whitaker*, 914 F.3d 654, 659 (9th Cir. 2019) (citation omitted). The agency found that petitioner failed to show (1) that she could not "relocate within Mexico to avoid future persecution on account of her sexual orientation," and (2) "that it would be unreasonable to expect her to relocate within Mexico." The record does not compel a contrary conclusion. *See Santana-Gonzalez*, 172 F.4th at 743.[1] While the agency found petitioner "credible, the agency need not find [her] evidence persuasive or sufficient to meet the burden of proof." *Garland v. Ming Dai*, 593 U.S. 357, 371 (2021).

The agency's explanation of its decision was sufficient. An agency need not

---

[1] We cannot and do not consider the purported excerpts from petitioner's credible fear interview because the full transcript is not in the administrative record, the excerpts are found solely in petitioner's brief to the Board of Immigration Appeals, and there is no evidence that the credible fear interview was conducted under oath. *See* 8 U.S.C. § 1252(b)(4)(A); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1067 n.11 (9th Cir. 2015) ("Statements in appellate briefs are not evidence."); *Singh v. Gonzales*, 403 F.3d 1081, 1088–90 (9th Cir. 2005) (disregarding statements at a credible fear interview when the court did not know whether the interview was conducted under oath).

"follow a particular formula or incant 'magic words.'" *Ming Dai*, 593 U.S. at 369. And petitioner "has not shown that the Board overlooked any important evidence." *Hernandez v. Garland*, 52 F.4th 757, 771 (9th Cir. 2022). The agency referenced petitioner's individual circumstances.

Petitioner forfeited her challenge to the agency's denial of her claim based on her second proposed particular social group. The agency denied petitioner's claim because she failed to establish a nexus to a well-founded fear of persecution and, in the alternative, failed to demonstrate a cognizable particular social group. Petitioner did not challenge the agency's nexus finding, which is fatal to her claim. *See Riera-Riera v. Lynch*, 841 F.3d 1077, 1081 (9th Cir. 2016) ("The lack of a nexus to a protected ground is dispositive of [] asylum and withholding of removal claims."); *Nguyen v. Barr*, 983 F.3d 1099, 1102 (9th Cir. 2020) (finding the petitioner "has waived review" of an "aspect of the Board's decision" where the petitioner did not "contest" that determination in his opening brief).

The agency did not abuse its discretion by declining to consider new evidence on appeal or remand for further factfinding. *See Castillo-Villagra v. I.N.S.*, 972 F.2d 1017, 1028 (9th Cir. 1992) (holding that the "taking of administrative notice is reviewed for abuse of discretion"); *Ani v. Bondi*, 155 F.4th 1118, 1126 (9th Cir. 2025) ("We review the BIA's denial of a motion to remand for abuse of discretion."). By regulation, the Board of Immigration Appeals is

generally prevented from finding facts, and there is no requirement that the agency sua sponte take administrative notice of evidence. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (2021); *Fisher v. I.N.S.*, 79 F.3d 955, 963 (9th Cir. 1996) (en banc). The agency's explanation for its actions was sufficient because it is not required to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) (citation omitted). Finally, petitioner forfeited her challenge to the agency's application of the wrong legal standard to her motion to remand by not raising the issue in her opening brief. *See Nguyen*, 983 F.3d at 1102.

We reject petitioner's argument that the agency did not analyze her withholding claim as unsupported by the record.

Petitioner forfeited her argument that the agency violated her due process rights. "We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." *Stockton v. Brown*, 152 F.4th 1124, 1143 (9th Cir. 2025) (citation omitted).

**PETITION DENIED.**

*Buenrostro Rodriguez v. Blanche*, 21-1157

MENDOZA, Circuit Judge, dissenting:

This case is about whether the agency performed the analysis that our law requires before denying her asylum claim. Because the agency failed to demonstrate that it did, I respectfully dissent from the majority's denial of the petition.

The Board of Immigration Appeals ("the Board") concluded that Petitioner failed to establish a well-founded fear of future persecution because she could reasonably relocate to another "gay-friendly part of Mexico." It also summarily rejected via a single footnote her claim based on a second proposed particular social group consisting of persons with an American upbringing and substantial family ties in the United States.

Neither determination suffices under our case law nor the applicable regulations. The Board did not consider record evidence directly relevant to the reasonableness of internal relocation, and it resolved an undeveloped particular-social-group claim without the factual findings necessary to do so. I would therefore grant the petition and remand for proper reasonableness and particular social group analysis.

I.

Our governing regulations require more than a conclusory determination that some location within a country may be safer than the place from which an applicant fled. Instead, the agency must also determine whether internal relocation would be "reasonable" under the applicant's particular circumstances. *See* 8 C.F.R. § 1208.13(b)(3)(i).

As we have repeatedly explained, the relocation inquiry has two distinct components: whether the applicant can relocate *safely* and whether it would be *reasonable* to expect her to do so. *See, e.g., Singh v. Whitaker*, 914 F.3d 654, 659 (9th Cir. 2019) ("Relocation analysis consists of two steps: (1) 'whether an applicant could relocate safely,' and (2) 'whether it would be reasonable to require the applicant to do so.'"); *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214–15 (9th Cir. 2004) (examining the reasonableness of relocation). The applicable regulation expressly directs the agency to consider the "*totality* of the relevant circumstances." 8 C.F.R. § 1208.13(b)(3) (emphasis added).

Here, the Board's analysis fell short of these dictates. Petitioner entered the United States at six years old and spent approximately nineteen years here before returning to Mexico for only a brief period. She testified that she grew up in the United States, attended school here, graduated from high school in Tucson, and devoted herself to raising two United States citizen children. The Immigration Judge ("IJ") himself recognized that Petitioner had "basically grew up in the United States" and that "her English is flawless." The record contains further testimonial evidence that, when she returned to Mexico as an adult, she was effectively a stranger to the country in which she was born. She had spent nearly all her formative years elsewhere and testified that she had virtually no familial or social support structures in Mexico.

Whether that evidence ultimately proves that relocation would be unreasonable is not the question we must answer. Instead, we must determine whether the IJ and the Board properly considered relevant evidence that was pertinent to Petitioner's ability to internally relocate. A person who spent nearly two decades growing up in another country, who has American citizen children, and whose family and social ties are concentrated in the United States is

undisputedly differently situated from an applicant who has social and cultural connections to their country of origin.  At the very least, the agency was required to show that it grappled with that reality before concluding that Petitioner could reasonably relocate.

In this case, the agency did not undertake that analysis.  Instead, the Board stated only that Petitioner "has not provided a clear, objective reason why she could not reasonably relocate to a gay-friendly part of Mexico" and that, "[i]n light of all of the evidence," she failed to carry her burden.  These conclusory statements do not show whether the Board bothered to consider any aspect of the category of evidence discussed above.  *See Pirir-Boc v. Holder*, 750 F.3d 1077, 1086 (9th Cir. 2014) ("While the BIA is not required to 'discuss each piece of evidence submitted,' where there is 'any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include . . . failing to mention highly probative or potentially dispositive evidence.'").

Of course, the Board need not discuss every piece of evidence.  Nor must it employ any particular verbal formula.  *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("To the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'").  But when a regulation requires consideration of specific factors, and the record contains evidence bearing directly on those factors, the agency *must* show it considered them.  *See Singh*, 914 F.3d at 661 (requiring that the agency show a "reasoned analysis" of the petitioner's "individualized situation").

Here, there is no such consideration whatsoever.  Instead, the Board effectively reduced the inquiry solely to the question of whether Mexico City contains a visible LGBT community and whether Petitioner established that her

persecutors could find her there.  But our caselaw and the relevant regulations require more.  They demand consideration of the human realities of internal relocation.

Because the Board failed to demonstrate that it considered evidence that is relevant to the reasonableness inquiry prescribed by § 1208.13(b)(3), I would remand for the agency to conduct that analysis in the first instance.

## II.

I also disagree with the majority's disposition as to Petitioner's second proposed particular social group.

The Board expressly acknowledged that the IJ "did not provide full analysis of this claim."  That concession should have ended the matter.  But rather than remanding for the IJ to conduct the proper analysis, the Board instead concluded that Petitioner "did not present sufficient evidence to establish a well-founded fear of persecution" on that ground and further determined that she had not shown membership in a cognizable particular social group.

That approach created two problems.  First, the Board resolved factual and mixed questions that the IJ never meaningfully addressed.  Whether a proposed social group satisfies the requirements of immutability, particularity, and social distinction depends upon fact-intensive findings that only the IJ can make.  *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1087–93 (9th Cir. 2013) (en banc) (discussing the particularity and social visibility requirements); *Akosung v. Barr*, 970 F.3d 1095, 1102–04 (9th Cir. 2020) (discussing the social visibility requirement).  The Board cannot do its own fact finding.  When the IJ has not developed the relevant factual record or made any of the necessary findings, the proper course is therefore to remand.  *See Alanniz v. Barr*, 924 F.3d 1061, 1069

(9th Cir. 2019) ("[Petitioner] is entitled to have the IJ first consider the facts that define his proposed group, and neither the [Board] nor the Ninth Circuit is authorized to undertake the initial factfinding necessary to determine the viability of the group."); *Brezilien v. Holder*, 569 F.3d 403, 414 (9th Cir. 2009) (applying the social visibility analysis to petitioner's factual allegations). This error alone necessitates remanding.

Second, the Board treated Petitioner's proposed social group as indistinguishable from other groups that this court has previously rejected, such as "Mexicans returning from the United States" or persons perceived as wealthy because of their American appearance. *See, e.g.*, *Ramirez-Munoz v. Lynch*, 816 F.3d 1226, 1228–29 (9th Cir. 2016); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151–52 (9th Cir. 2010).

But Petitioner's claim is different. Instead, her proposed social group is based on the fact that she was targeted because of characteristics rooted in her *upbringing*. She came to the United States as a child, spent nineteen formative years here, possesses substantial family ties in the United States rather than Mexico, and was perceived as culturally American. Indeed, the women who threatened her mocked the way she spoke Spanish, criticized her for "living like you are in the United States," noted that she was "the only person who came from the U.S.," and referenced her close family ties in the United States.

Those facts may ultimately prove insufficient to establish a cognizable social group. But that is beside the point. Regardless of the merits of her proposed social group, that determination requires an individualized analysis that the IJ never performed and that the Board was not free to bypass.

Instead of properly responding to the faults of the agency's decision-making, the majority concludes that Petitioner forfeited any challenge relating to the second proposed social group because she did not separately challenge the Board's finding that she failed to establish a well-founded fear of persecution. But the Board's determination that Petitioner failed to establish a well-founded fear of persecution on this theory was *itself* part of the error. The Board reached that conclusion only after acknowledging that the IJ failed to fully analyze the particular social group.

A petitioner cannot forfeit an argument when they challenge a premise upon which the adverse ruling inherently rests. Petitioner consistently argued that the agency never properly adjudicated her proposed social group and that the Board improperly stepped into the role reserved for the IJ. Those arguments necessarily encompass the Board's conclusion that the evidence was insufficient to establish persecution. *See Alanniz*, 924 F.3d at 1069. It is counterintuitive to find that a petitioner forfeited her well-founded fear of persecution arguments when the Board's persecution analysis rested on a fundamentally deficient analysis of the *very group* that formed the basis of the persecution. How could the Board determine that there is no threat of future persecution without an understanding of the asserted persecuted group itself? The Board's decision does not provide an answer to this question.

If the Board lacked authority to resolve the particular social group issue in the first instance, then its finding that there was no well-founded fear of future persecution based on that particular social group cannot stand. *See* 8 C.F.R. § 1208.13(b)(2)(i)(A) (outlining how a fear of persecution turns on whether "[t]he applicant has a fear of persecution in his or her country of nationality or, if stateless, in his or her country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political

opinion"). The threshold question is whether the Board could make that particular social group determination at all. Because that issue was adequately raised and preserved, I believe the Board erred by reaching the issue of persecution when the IJ failed to consider the contours of the particular social group on which Petitioner's persecution claim rests.

III.

Administrative agencies are undoubtedly entitled to substantial deference, but that deference exists subject to an expectation that the agency exercises its judgment through the reasoned decision-making process required by the law. Here, the Board did not adequately explain whether it considered evidence directly relevant to the reasonableness of relocation. And after openly acknowledging that the IJ failed to fully analyze Petitioner's second proposed social group, the Board nonetheless proceeded to impermissibly resolve that claim itself.

Our job is to ensure that the agency properly considered whether Petitioner qualified for asylum. Because it did not, and because Petitioner adequately preserved her arguments for our review, I would grant the petition and remand for further proceedings. I therefore respectfully dissent.